# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| SHELBY COUNTY GOVERNMENT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:26-cv-00835 |
| | ) | Judge Crenshaw |
| BILL LEE, in his official capacity as | ) | Magistrate Judge Frensley |
| Governor of the State of Tennessee, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF DEFENDANTS'
## MOTION TO DISSOLVE THE JULY 1, 2026 ORDER

The July 1, 2026, Order indefinitely suspends a duly enacted State statute without notice to Defendants, without an opportunity to be heard, and without making the findings required by Fed. R. Civ. P. 65.  Order, ECF 22.  The day after the Order issued, Plaintiffs told the Court that it "grant[ed]" their motion for a TRO.  Pls.' Notice, ECF 23.  They now about-face, arguing the Order was never Rule 65 relief, but rather an administrative stay resting on the All Writs Act and the Court's inherent authority.  Pls.' Resp., ECF 38 at 2646–47.[1]

Plaintiffs' response confirms the dispositive issue.  Either the July 1 Order is governed by Rule 65, in which case it was procedurally defective when entered and expired by operation of law on July 15, 2026, or it is not Rule 65 relief, in which case Plaintiffs identify no authority permitting a district court to suspend enforcement of a State statute outside the Federal Rules of Civil Procedure.  Under either theory, the Order cannot remain in effect.

## ARGUMENT

**I.      Neither the All Writs Act Nor Inherent Authority Sustains the Order.**

The All Writs Act does not authorize a district court to circumvent the Federal Rules of Civil Procedure.  It is a residual grant of authority available only where no other rule or statute governs the requested relief.  *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985); *accord Clinton v. Goldsmith*, 526 U.S. 529, 537–38 (1999).  Rule 65 specifically addresses interim orders restraining a party's conduct pending adjudication and prescribes the notice, content, specificity, and duration required for such relief.  The All Writs Act supplies no independent authority to avoid those requirements.

The same is true of inherent authority.  The Supreme Court has explained that when the Federal Rules adequately address an issue, courts "should rely on the Rules rather than the

---

[1] Pincites to the Court's electronic docket entries use the Page ID file-stamp pagination.

1

inherent power," resorting to inherent power only where the Rules "are not up to the task." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Likewise, inherent authority "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45–46 (2016); Fed. R. Civ. P. 83(b). Rule 65 leaves no gap here. It comprehensively governs the relief Plaintiffs requested and received.

Plaintiffs' authorities underscore that defect. Their only Supreme Court authority recognizes that an administrative stay "should last no longer than necessary to make an intelligent decision on the motion." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). Plaintiffs identify no authority for an administrative stay that persists for weeks without any ruling on Rule 65 relief or any consideration of the merits. Pls.' Resp., ECF 38 at 2646–47.

## II. The Order Reversed the Status Quo Rather Than Maintaining It.

The July 1 Order by its terms did not grant an administrative stay but functionally upended the status quo, which is the existing state of affairs when a court acts—not a legal regime that ceased to exist weeks earlier. By July 1, the Tennessee Public Schools Accountability Act had been law for more than 40 days, the Governor and Speakers had appointed the Oversight Board, and the Board had already convened its first meeting. Am. Compl., ECF 14 ¶¶ 87, 176. The July 1 Order directed the parties to "maintain the STATUS QUO before enactment of [the Act]." Order, ECF 22. That directive did not preserve existing conditions; it enjoined them.

The July 1 Order has now remained in effect for nearly a month. Whatever its label, it no longer resembles a brief pause while the Court considers interim relief. And where an order carries the hallmarks of injunctive relief, courts will treat it as what it functionally is, regardless of its caption. *Abbott v. Perez*, 585 U.S. 579, 594 (2018); *Ohio Coal. v. Blackwell*, 467 F.3d 999, 1005–06 (6th Cir. 2006). That is precisely the type of injury the Supreme Court has recognized

2

when a State is prevented from enforcing statutes enacted by its elected representatives. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). At bottom, the Order grants the interim relief itself, without any showing of justification. It cannot stand.

**III.    As Rule 65 Relief, the July 1 Order Has Expired and Was Defective When Entered.**

Plaintiffs cannot escape Rule 65 by arguing that the Court expected the July 1 Order to remain in effect. If the Order is treated as a TRO, Rule 65 supplies its governing procedures and limitations. If it continued beyond Rule 65's fourteen-day limit, it necessarily became subject to the standards governing preliminary injunctions. Either way, Rule 65 controls.

The July 1 Order issued without notice to Defendants. Indeed, the Order directed Plaintiffs' counsel to serve Defendants only after it had already been entered. Order, ECF 22 at 261. Rule 65 therefore limited the Order's duration to fourteen days unless, before expiration, the Court extended it for good cause or Defendants consented. Fed. R. Civ. P. 65(b)(2). Neither occurred. The Order therefore expired on July 15, 2026.

Plaintiffs respond that the Court's subsequent referral of the case to the Magistrate Judge demonstrates an expectation that the Order would remain in effect beyond Rule 65's fourteen-day limit. Pls.' Resp., ECF 38 at 2647. But when a TRO remains in effect beyond Rule 65's prescribed period, it "must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 86–88 (1974); *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439–40, 443 (1974). Plaintiffs failed to show these standards were met.

Nor did the July 1 Order satisfy Rule 65 when entered. Rule 65(b)(2) requires an order issued without notice to "describe the injury and state why it is irreparable." The July 1 Order recounts only what "plaintiffs allege" and what "plaintiffs argue," including potential

"interruptions" in preparation for the school year, but it never adopts those allegations as findings. Order, ECF 22 at 260. Repeating a party's allegations is not the same as finding irreparable injury.

The Order also fails Rule 65(d)'s specificity requirement. Rather than identifying conduct restrained or required, it directs the parties to "maintain the STATUS QUO before enactment." *Id.* That instruction leaves the parties to determine for themselves what conduct is prohibited. Rule 65 requires more. An injunction must be sufficiently specific that "an ordinary person reading the court's order" can determine "exactly what conduct is proscribed." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022). The Sixth Circuit has repeatedly vacated injunctions that fail to satisfy that standard. *James B. Oswald Co. v. Neate*, 98 F.4th 666, 676 (6th Cir. 2024).

The uncertainty is not merely theoretical. It is presently unclear whether the Oversight Board may meet, communicate, or conduct organizational business without risking a violation. That uncertainty matters because the Board cannot adopt the processes for emergency contracts and payments whose absence Plaintiffs invoked to obtain the Order in the first place. *See* Langston Decl., ECF 20-1 at 255–58. As of June 30, the Board had no opportunity to create those processes, and the Order now bars them from doing so. Plaintiffs cannot justify continuing an Order based on uncertainty that the Order itself prevents Defendants from resolving.

## IV. Plaintiffs' Remaining Arguments Do Not Save the Order.

**Scheduling.** Plaintiffs assert that Defendants refused to engage in discovery or meaningful scheduling. Pls.' Resp., ECF 38 at 2646. The record shows otherwise. Defendants conferred with Plaintiffs and proposed three hearing dates within Rule 65's fourteen-day period. Defs' Notice, ECF 24 at 268–70. Defendants questioned only whether Plaintiffs' requested discovery was relevant to the claims actually pleaded. Plaintiffs declined every proposed hearing date and now invoke the resulting delay to justify continuing an order that Rule 65 prohibits.

4

**Merits.** Plaintiffs criticize Defendants for not re-briefing all four preliminary injunction factors in the Motion to Dissolve. But Defendants had already opposed Plaintiffs' request for a TRO and did not repeat arguments already before the Court. Defs' TRO Resp., ECF 34. Nor have Plaintiffs shown a likelihood of success. Their *Arlington Heights* argument relies principally on statements made by legislators who opposed the Act, while legislative enactments are entitled to a presumption of good faith. *Abbott*, 585 U.S. at 603. And Plaintiffs' discussion of *Pennhurst* ultimately confirms that *Ex parte Young* authorizes prospective relief only for ongoing violations of federal law, cleaving their state-law claims from that exception.

**The Comptroller's report.** The Court need not resolve any dispute concerning the Comptroller's report to grant the Motion to Dissolve. The procedural defects discussed above independently require dissolution. In any event, Tenn. Code Ann. § 49-1-616(a)(5) asks whether an audit showed deficiencies in management, accounting, or internal controls—not who first reported them—and the report is a public record of which the Court may take judicial notice. Fed. R. Evid. 201(b)(2).

## CONCLUSION

Defendants respectfully request that the Court declare the July 1 Order expired or dissolve it and clarify that the Oversight Board members may meet, communicate, and conduct organizational business pending any future preliminary injunction hearing.

5

Respectfully submitted,

**JONATHAN SKRMETTI**
Attorney General and Reporter

s/ Robert W. Wilson
SHANNON HOFFERT TN BPR 28430
Deputy Attorney General

ROBERT W. WILSON TN BPR 34492
MATTHEW DOWTY TN BPR 36070
Senior Assistant Attorneys General

One Commerce Square
40 S. Main St., Suite 1014
Memphis, TN 38103
(901) 543-9039
Shannon.Hoffert@ag.tn.gov
Robert.Wilson@ag.tn.gov
Matthew.Dowty@ag.tn.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served by operation of the

Court's ECF/PACER system on this the 27th day of July 2026, upon:

**BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC**

Bruce McMullen
Lori H. Patterson
Jerrick Murrell
Jennie Vee Silk
165 Madison Ave., Suite 2000
Memphis, TN 38103

6

bmcmullen@bakerdonelson.com
lpatterson@bakerdonelson.com
jmurrell@bakerdonelson.com
jsilk@bakerdonelson.com
*Counsel for Plaintiffs Shelby County*
*Government & Shelby County*
*Board of Commissioners*

**THE WADE LAW FIRM, PLLC**

Allan J. Wade
Brandy S. Parrish
5050 Poplar Ave., Suite 1028
Memphis, TN 38157
awade@thewadefirm.com
bparrish@thewadefirm.com
*Counsel for Plaintiffs Shelby County*
*Board of Education, Michelle Robinson*
*McKissack, Natalie J. McKinney,*
*Stephanie P. Love, Sable Otley,*
*Keith Williams, Towanna Murphy,*
*Amber Huett-Garcia, Joyce Dorse*
*Coleman, & Tamarques Porter*

s/ Robert W. Wilson
Robert W. Wilson
Senior Assistant Attorney General

7