**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | |
|---|---|
| SHELBY COUNTY GOVERNMENT;<br>SHELBY COUNTY BOARD OF<br>COMMISSIONERS; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BILL LEE, in his official capacity as<br>Governor of Tennessee; et al.,<br><br>Defendants. | Case No. 3:26-cv-00835<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Jeffery S. Frensley |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

Defendants' opposition to Plaintiffs' Motion for Preliminary Injunction rests on three pillars, each of which fails. First, Defendants raise threshold jurisdictional defenses—sovereign immunity and standing—that ignore both the ongoing nature of the Defendants' enforcement roles and the personal injuries suffered by individual Plaintiffs. Second, on the merits, Defendants ask the Court to follow *Moore v. Detroit School Reform Board*, but that case is distinguishable on its facts, procedural posture, and evidentiary record; and the *Arlington Heights* framework plainly supports Plaintiffs' showing of discriminatory purpose. Third, Defendants' irreparable-harm and equities arguments assume the Act's constitutionality—the very question before the Court.

## I. THE EX PARTE YOUNG EXCEPTION APPLIES.

Defendants argue that the Governor, Speakers, and Commissioner lack a sufficient enforcement connection to satisfy *Ex parte Young*. This argument fails. The Commissioner must "determine" that a local education agency meets the statutory criteria—a substantive evaluative exercise, not a ministerial rubber stamp. Tenn. Code Ann. § 49-1-616(a)(5)–(6). And the Governor and Speakers do not merely appoint Oversight Board members; they may remove them "at any time for any reason." *Id.* § 49-1-616(c)(3)(A). That continuing authority, to remove members and reconstitute the very body exercising the challenged powers, distinguishes this case from every decision Defendants cite.

## II. PLAINTIFFS HAVE STANDING.

MSCS and Shelby County bring Equal Protection claims on behalf of the schoolchildren Plaintiffs. It is well settled that school boards may invoke third-party standing on behalf of students. In *Akron Board of Education v. State Board of Education*, the Sixth Circuit held that a local board had standing to litigate the constitutional rights of students based on "a close relationship between the plaintiffs who seek to bring an action and the class of persons whose constitutional rights are claimed to be violated." 490 F.2d 1285, 1289 (6th Cir. 1974). The Sixth

Circuit reaffirmed this principle in *Kelley v. Metropolitan County Board of Education*, holding that a school board can seek to enjoin a state agency from "taking a step to deprive [the local body's] school students of their constitutional right to attend nonsegregated schools." 836 F.2d 986, 998 (6th Cir. 1987).[1]

Defendants argue that MSCS and Shelby County cannot sue on behalf of the students because those students are already parties here. Importantly, the Schoolchildren Plaintiffs are not the only victims of the Defendants' unconstitutional acts and could leave the school district before this litigation is complete. "Courts have found the following to constitute a hindrance that keeps a third party from protecting his or her own rights: deterrence from filing suit due to privacy concerns, imminent mootness of a case, or systemic practical challenges to pursuing one's own rights." *Moody v. Michigan Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). Here, there are obvious systemic practical challenges for schoolchildren to pursue their own rights.

Further, the individual Schoolchildren Plaintiffs independently have standing. Standing requires only that the State's differential treatment was motivated by race, resulting in a cognizable personal injury. When the government classifies persons by race—whether explicitly or through a facially neutral scheme adopted because of its racial impact—each person subject to that classification suffers an injury in fact sufficient for Article III standing. *See Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Defendants' contention that the harm is merely "institutional" misunderstands the doctrine: "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the

[1] The Western District of Tennessee applied this precedent and held that the School Board had "standing to sue in a representative capacity on behalf of Memphis schoolchildren affected by the defendants' actions." *Bd. of Educ. of Shelby Cty. v. Memphis City Bd. of Educ.*, No. 11-2101, 2011 WL 3444059, at *20 (W.D. Tenn. Aug. 8, 2011).

imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.*

## III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Defendants mischaracterize Plaintiffs' claim as resting solely on disparate impact. It does not. Under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), disparate impact is merely the starting point of a totality analysis requiring "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 265–66. Discriminatory purpose need be only "a motivating factor," not the dominant one. *Id.* Plaintiffs' evidence supports an inference of discriminatory purpose: (1) Criteria 5 and 6 were calibrated specifically to reach MSCS; (2) the Act currently reaches only majority-African American MSCS while no majority-white district meets the four-of-six threshold; (3) Tennessee has a documented historical pattern of state intervention targeting majority-African American school governance; and (4) the legislative record contains contemporaneous statements acknowledging the racial dimensions of the legislation, which proponents failed to rebut. *See Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (discriminatory purpose exists where legislature acted "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group").

Defendants' contention that references to "Memphis" and "MSCS" are race-neutral geographic descriptors ignores the realities of the legislative debate. In context, these references identify a known majority-African American community in a discussion about state intervention in that community's democratic governance. The Sixth Circuit has recognized that facially neutral geographic or institutional references can serve as proxies for race when the referenced entity is closely identified with a particular racial group. *See Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 637 (6th Cir. 2016).

Defendants' arguments further misapply the *Arlington Heights* framework. Under *Arlington Heights*, legislative history is one factor in a totality analysis, and a proponents' failure

to rebut direct accusations of racial targeting is an important consideration. When legislators are told on the floor that their bill targets a community because of race, and they offer no race-neutral justification in response, that silence is circumstantial evidence the factfinder may consider.

Moreover, Defendants' reliance on *Moore v. Detroit School Reform Board*, 293 F.3d 352 (6th Cir. 2002), is misplaced. *Moore* held only that those plaintiffs failed to present sufficient evidence on that record—not that such challenges can never succeed. Here, Plaintiffs present far more: tailored criteria added after the Department of Education documented those precise conditions at MSCS, contemporaneous legislative statements identifying racial concerns, and a historical background of state intervention in African American school governance. Moreover, the preliminary-injunction standard—likelihood of success—is materially lower than the summary-judgment standard that governed *Moore*. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).[2]

## IV. IRREPARABLE HARM AND THE BALANCE OF EQUITIES FAVOR PLAINTIFFS.

Constitutional violations are presumptively irreparable. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). Under the Act, MSCS students are subjected to a governance regime imposed because of race—a dignitary harm no monetary award can remedy. The State has no legitimate interest in enforcing an unconstitutional law. *Hamilton's Bogarts, Inc. v. Michigan*, 501

---

[2] In *Moore*, the plaintiffs' evidence consisted primarily of allegations about the Legislature's speedy passage of the reform act, disrespectful treatment of Detroit legislators, failure to hold hearings in Detroit, and reliance on a years-old scandal. *Moore*, 293 F.3d at 369. Here, Plaintiffs allege far more: (1) the General Assembly combined six criteria, with Criteria 5 and 6 added after the Department of Education documented those precise conditions at MSCS; (2) the legislative record includes contemporaneous statements identifying racial concerns; and (3) Plaintiffs' cumulative evidentiary showing—disparate impact, tailored criteria, legislative history, and historical background of state intervention in African American school governance—exceeds what the *Moore* plaintiffs were able to present.

F.3d 644, 649 (6th Cir. 2007). And the State's authority over public education, Tenn. Const. art. XI, § 12, does not license discrimination. *See Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 487 (1982). The public interest in equal protection and democratic self-governance outweighs any interest in implementing a law likely enacted with discriminatory purpose. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Defendants argue that the State suffers irreparable injury from any injunction of a duly enacted law. But these arguments assume the very conclusion at issue—the Act's constitutionality. Where Plaintiffs demonstrate a likelihood of success on the merits, as they have here, the equities shift decisively in their favor. *See Hamilton's Bogarts*, 501 F.3d at 649 ("[T]he issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute.").

## V. LIMITED DISCOVERY IS WARRANTED.

The *Arlington Heights* framework expressly contemplates evidence beyond the legislative record, including the "specific sequence of events leading up to the challenged decision" and "departures from the normal procedural sequence." 429 U.S. at 267. Legislative privilege does not shield communications with executive-branch officials who participated in crafting the statutory criteria. *See Kent v. Ohio House of Rep. Dem. Caucus*, 33 F.4th 359, 365 (6th Cir. 2022). Whether the Department of Education was consulted in calibrating the criteria and whether those criteria were reverse-engineered to target MSCS go directly to discriminatory purpose. Limited, targeted discovery into non-privileged communications is warranted.

## VI. THESE ISSUES SHOULD BE DECIDED AFTER A HEARING

Plaintiffs respectfully request that all issues raised as to the merits of Plaintiffs' claims be decided only after the discovery requested has been conducted, the parties have briefed the issues with the benefit of this discovery, and this Court has held the hearing requested.

Dated: August 17, 2026.

Respectfully submitted,

BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC

*/s/ Bruce McMullen*

Bruce McMullen (Tenn. Bar #18126)
Lori H. Patterson (Tenn. Bar #19848)
Jerrick Murrell (Tenn. Bar #34368, admitted *pro hac vice*)
Jennie Vee Silk (Tenn. Bar #35319)
165 Madison Ave., Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Fax: (901) 577-2303
bmcmullen@bakerdonelson.com
lpatterson@bakerdonelson.com
jmurrell@bakerdonelson.com
jsilk@bakerdonelson.com

*Counsel for Plaintiffs Shelby County Government and Shelby County Board of Commissioners*

THE WADE LAW FIRM, PLLC

Allan J. Wade (Tenn. Bar # 4339)
Brandy S. Parrish (Tenn. Bar # 21631)
5050 Poplar Ave., Suite 1028
Memphis, Tennessee 38157
Telephone: 901.322.8005
awade@thewadelawfirm.com
bparrish@thewadefirm.com
*Counsel for Plaintiffs Shelby County Board of Education, Michelle Robinson McKissack, Natalie J. McKinney, Stephanie P. Love, Sable Otey, Keith Williams, Towanna Murphy, Amber Huett-Garcia, Joyce Dorse Coleman, and Tamarques Porter*