**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **SHELBY COUNTY GOVERNMENT, *et al*.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**All members of the EDUCATIONAL OVERSIGHT BOARD OF MEMPHIS-SHELBY COUNTY SCHOOLS, in their official capacities,**[1]<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **No. 3:26-cv-00835**<br><br>**Judge Crenshaw**<br><br>**Magistrate Judge Frensley** |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

---

The Court should deny Plaintiffs' Motion for Leave to File Third Amended Complaint (D.E. 81) on grounds of futility. Plaintiffs' Second Amended Complaint ("SAC") relied exclusively on alleged injuries suffered by students of Memphis-Shelby County Schools as the basis for their claim that the Tennessee Public Schools Accountability Act ("the Act"), codified at

[1] Following the Court's dismissal of the Governor, the Speakers, and the Commissioner of Education (D.E. 79, PageID 3260-61), the members of the Educational Oversight Board of Memphis-Shelby County Schools in their official capacities are the remaining defendants.

Tenn. Code Ann. § 49-1-616, violates the Fourteenth Amendment Equal Protection Clause.[2] The SAC was devoid of factual allegations that students are harmed by the operation of the Act.[3]

Plaintiffs' proposed TAC identifies three students as "Student Plaintiffs," "racial minorities enrolled in MSCS schools governed by the statute." D.E. 81-1 at PageID 3336-3337. But, like the SAC before it, the TAC also fails to make sufficient factual allegations to demonstrate that those students, or any others, suffer an injury in fact by the operation of the Act.[4] The Court should deny Plaintiffs' Motion for Leave to File Third Amended Complaint on grounds of futility and dismiss this action, or in the alternative, grant Defendants' pending motion to dismiss on grounds of implausibility.

## I. THE COURT SHOULD DENY PLAINTIFFS' MOTION TO AMEND BECAUSE FURTHER AMENDMENT WOULD BE FUTILE AND DISMISS THEIR CLAIMS FOR LACK OF STANDING.

Rule 15(a)(2) provides that courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This mandate flows from the principle that courts ought to afford plaintiffs an opportunity to test their claims on the merits where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[2] All Plaintiffs agree that they rely exclusively on the rights of the students of Memphis-Shelby County Schools ("MSCS") for their contention that they have standing. Transcript of October 2, 2026 Proceedings ("Transcript"), D.E. 80 at PageID 3278, ll. 16-20. *See also* proposed Third Amended Verified Complaint for Declaratory Judgment and Injunctive Relief ("TAC") at ¶ 12, D.E. 81-1 at PageID 3307 ("Plaintiffs Shelby County Government and Memphis-Shelby County Board of Education, operating as Memphis-Shelby County Schools, bring Count One on behalf of the students of MSCS.")

[3] *See* Transcript, D.E. 80 at PageID 3285, l. 20—3286 l. 4.

[4] Likewise, the original Complaint and the First Amended Complaint also failed on this score. *See* Verified Complaint for Declaratory Judgment and Injunctive Relief (D.E. 1) and First Amended Verified Complaint for Declaratory Judgment and Injunctive Relief (D.E. 14)

Notwithstanding the liberality with which courts generally approach motions to amend, "a court need not grant a motion to amend when the reason for amendment is improper, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024) (quoting *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022)).

Amendment is futile if, even after amendment, "the complaint still could not withstand a Rule 12(b)(6) motion to dismiss." *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (quoting *Skatemore*, 40 F.4th at 737-38). And "it follows that a district court may also deny leave to amend as futile where the proposed amended complaint fails for lack of standing." *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 598 (D. Md. 2022); *see also Apple Corp. Wellness, Inc. v. BlueCross BlueShield of Tenn., Inc.*, Case No. 1:15-cv-324, 2016 WL 5390878 at *4 (E.D. Tenn. Sept. 27, 2016) (Mattice, J.) ("While most cases analyze proposed amendments for futility under Fed. R. Civ. P. 12(b)(6), this Court has held that a proposed amendment is futile if it could not withstand a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).")

The party opposing a motion to amend has the burden of establishing futility. *Spann v. Tenn. Dep't of Corr*., No. 1:25-cv-00005, 2025 WL 1680014, at *5 (M.D. Tenn. June 13, 2025) (citation omitted). Although the proposed TAC contains broad assertions that were not in Plaintiffs' previous three filings (D.E. 1, 14, and 57), they are insufficient to confer standing, as demonstrated below. The Court should deny leave to amend as futile and dismiss this action.

### A. Plaintiffs Lack Article III Standing and Dismissal Should Result.

Under Article III of the U.S. Constitution, federal courts' jurisdiction is "limit[ed] . . . to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const. art. III, § 2). Standing doctrine derives from that limitation and reserves the judicial process for disputes among litigants as opposed to the kind of lawmaking attendant to the other branches of government. *See id*. Article III standing requires a plaintiff to present "(1) an injury in fact that is both (2) caused by the defendant's conduct and (3) redressable by a favorable court decision." *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 842 (6th Cir. 2024) (citing *Driehaus*, 573 U.S. at 157-58). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

#### 1. Student Plaintiffs A.O., R.O., and E.R. lack an injury in fact.

For purposes of standing, an injury in fact must be "concrete" and "particularized," meaning that it must be "real and not abstract" and "affect[] the plaintiff in a personal and individual way and not be a generalized grievance." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024) (internal quotation marks and citations omitted). Likewise, it must "actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id*. (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Student Plaintiffs cannot bypass Article III's concrete, particularized, and imminent injury requirement with nothing more than the bald assertion that "because of their race," the Act subjects them to "a uniquely burdensome legal regime." TAC, at ¶ 225, D.E. 81-1 at PageID 3337.

Plaintiffs do not identify any burden that the Act imposes on students. The TAC does not point to any action that the Act requires students to take or refrain from taking. The TAC asserts

that students "are the persons upon whom Public Chapter 1057 operates most directly," *id.*, at ¶ 223, D.E. 81-1 at PageID 3336, but Plaintiffs have identified no provision of the Act that regulates the students' conduct in any way. The statutory text is clear that the only entity to be regulated under the Act is the LEA, not its students. *See* Tenn. Code Ann. § 49-1-616(a)(1) ("An education oversight board, hereinafter referred to as an oversight board must be created for an LEA that meets four (4) or more of the following six (6) criteria"). And, as the Supreme Court has recognized, "when (as here) a plaintiff challenges the government's unlawful regulation (or lack of regulation) of *someone else*, standing is not precluded but it is ordinarily substantially more difficult to establish." *FDA*, 602 U.S. at 382 (emphasis in original) (internal quotation marks and citation omitted). None of Plaintiffs' speculative arguments overcome that difficulty.

Alleged Diversion of Financial Resources. The TAC asserts that "[e]very dollar diverted to a duplicative, state-appointed governance layer is a dollar that is not spent on the Student Plaintiffs' teachers, classrooms, instructional materials, transportation, and support services." ¶ 229(a), D.E. 81-1 at PageID 3338. But that claim rests on what the Supreme Court has labeled "unjustifiable economic and political speculation" that all government expenditures necessarily result in a negative impact on the government's total budget. *See Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 136 (2011). That is certainly not the case when, as here, the oversight board is charged with developing a transformation plan to "remediate any fraud, waste, abuse, or financial mismanagement in the LEA," Tenn. Code Ann. § 49-1-616(d)(7)(f). Those very problems have cost MSCS $119 million dollars, D.E. 34-4 at Page ID 1376. If the oversight board is even marginally effective at its work, the resulting savings would likely allow *more* resources to be used for Student Plaintiffs' benefit, not less. The TAC's unfounded assumptions to the contrary cannot establish Student Plaintiffs' standing based on a hypothetical financial

injury. *See Mackinac Ctr. for Public Policy v. U.S. Dept. of Education*, 175 F.4th 692, 700 (6th Cir. 2026) ("An actual or imminent injury is not speculative—in other words, the injury must have already occurred or be likely to occur soon.").

Alleged Operational Instability. The TAC complains that the Act's grant of authority to the oversight board results in "uncertainty [that] disrupts continuity of instruction, staffing, and services for the Student Plaintiffs." TAC, at ¶ 229(b), D.E. 81-1 at Page ID 3338-39. But, as Defendants have pointed out previously, such operational concerns are highly conjectural and inconsistent with the provisions of the statute itself. *See* Defts.' Resp. in Opp. to Pls.' Mot. for TRO, D.E. 34 at PageID 1343. Plaintiffs cannot merely point to unspecified future actions that the oversight board may take with respect to the LEA, assume those actions will be harmful, and further conclude that those harms will be personally borne by Student Plaintiffs or their peers. "Article III prohibits federal courts from stacking hypothetical on hypothetical to speculate that harm will eventually materialize. *Trump v. California*, No. 26A124, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026). And, Plaintiffs have identified no authority suggesting that mere uncertainty about future events constitutes a present injury in fact. *See Airline Pros.' Assoc. of Int'l Brotherhood. of Teamsters, Loc. Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 989 (6th Cir. 2003) ("Consequently, the only injury Plaintiff will definitely suffer is abstract uncertainty . . . Plaintiff had to allege more.").

Alleged Stigmatic Injury. The TAC accuses the State of branding "the Student Plaintiffs' schools, and the community to which they belong, as failing and unfit for self-governance." TAC, at ¶ 229(c), D.E. 81-1 at PageID 3339. Leaving aside the obvious fact that the overwhelming majority of students in Tennessee's public K-12 schools are minors, such that very few of them exercise "self-governance" by electing their local school boards, Plaintiffs' argument on this point

effectively asserts that MSCS students have a constitutional right to the same form of school governance as is used elsewhere in the state. But Plaintiffs rightly disclaim that argument elsewhere, *id*. at ¶ 224, D.E. 81-1 at PageID 3337, as it is foreclosed by *Mixon v. State of Ohio*, 193 F.3d 389, 403 (6th Cir. 1999).

While being subject to discrimination can result in a cognizable stigmatic injury, such an injury must still involve some concrete interest and cannot be merely abstract. *New Doe Child #1 v. Congress of United States*, 891 F.3d 578, 594-95 (6th Cir. 2018) (quoting *Allen v. Wright*, 468 U.S. 747, 755 (1984)). For example, in *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), Jacksonville's facially discriminatory ordinance excluded the plaintiffs from certain contracting opportunities reserved for black and female-owned businesses. In finding standing, the Court noted that individuals claimed not just the dignitary harm of overt racial discrimination but the "inability to compete on an equal footing in the bidding process." *Id*. at 666. Similarly, it was not just the "feeling of inferiority" imposed by *de jure* segregation that justified relief in *Brown v. Board of Education*, 347 U.S. 483, 494 (1954); it was also black students' deprivation of "some of the benefits they would receive in a racial(ly) integrated school system." (internal citation omitted). *See also Allen*, 468 U.S. at 756. Regardless, unlike cases involving overt racial discrimination, here the Act does not classify Student Plaintiffs by their race in any way. It thus inflicts no dignitary or stigmatic injury at all, let alone one accompanied by harm to an additional concrete interest. Therefore, the Student Plaintiffs lack an injury in fact, and accordingly, standing.

And as the remaining Plaintiffs assert that all their claims are based on the standing of the Student Plaintiffs, it follows that they each lack standing as well due to their failure to allege an injury in fact.

### 2. In the alternative, even if the Student Plaintiffs have standing, the remaining Plaintiffs lack third-party standing.

In addition to the Article III requirements, courts have developed prudential limitations on standing, "as a tool of 'judicial self-governance.'" *See Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Among them is the general rule "preclud[ing] litigation in federal court . . . where instead of litigating 'his own legal rights and interests,' the plaintiff instead purports to 'rest his claim to relief on the legal rights or interests of third parties.' " *Id*. (quoting *Warth*, 422 U.S. at 499). Generally, parties may not assert the rights of nonparties. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998).

That principle is important both because it "frees the Court . . . from unnecessary pronouncement on constitutional issues [and] . . . premature interpretations of statutes in areas where their constitutional application might be cloudy" and "assures the court that the issues before it will be concrete and sharply presented." *Sec'y of State of Md. v. Joseph H. Munson Co*., 467 U.S. 947, 955 (1984) (first quoting *United States v. Raines*, 362 U.S. 17, 22 (1960); and then citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Moreover, the third-party rightsholders might have considered reasons for choosing not to assert their rights in court. *See Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976) (plurality opinion) ("[I]t may be that in fact the holders of those rights [ ] do not wish to assert them . . . .").

For those reasons, and because of the importance of "effective advocacy" for arriving at correct conclusions, courts should "construe legal rights only when the most effective advocates of those rights are before them." *Id*. at 114; *see also Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("This rule assumes that the party with the right has the appropriate incentive to challenge (or not

challenge) governmental action and to do so with the necessary zeal and appropriate presentation." (citing *Warth*, 422 U.S. at 500)).

Third-party standing is a narrow exception to the rule that litigants cannot assert the rights of nonparties. "A litigant may raise a claim on behalf of a third party if the litigant can demonstrate that it has suffered a concrete, redressable injury, that it has a close relation with the third party, and that there exists some hindrance to the third party's ability to protect his or her own interests." *Connection Distrib*., 154 F.3d at 295 (citing *Edmonson v. Leesville Concrete Co*., 500 U.S. 614, 629 (1991)). The litigant must have a relationship to the rightsholder "such that the litigant is an effective proponent of the rights of the third party . . . ." *Id*. (citing *Singleton*, 428 U.S. at 114–16 (plurality opinion)).

The non-student Plaintiffs fall short on all three prongs of the third-party standing test. *First*, a plaintiff must have a cognizable injury, and the nonstudent Plaintiffs here have conceded they have none. *See, e.g.,* Transcript, D.E. 80 at PageID 3277, l. 15—3278 l. 3. And they were right to make that concession: their claimed injuries are all governmental in nature and thus are not cognizable under the Fourteenth Amendment against the State that delegated that power in the first instance. *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178-79 (1907). A political subdivision "is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will." *City of Trenton v. State of New Jersey*, 262 U.S. 182, 187 (1923). The State's power over it is "unrestrained by . . . the Fourteenth Amendment." *Id.* at 188.

*Second*, Plaintiffs lack a sufficiently close relationship with the students they purport to represent, and in fact, their interests are often opposed to the interests of those they seek to

represent. The general rule that a party "cannot rest his claim to relief on the legal rights or interests of third parties," *Kowalski*, 543 U.S. at 129 (citation omitted), takes account of the commonsense assumption that "the third party will be the best advocate of its own position, and the plaintiff [seeking standing under the third party's rights] may place a slightly different, self-interested 'spin' on its presentation." *Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir. 1991) (citing *Joseph H. Munson Co.*, 467 U.S. at 955). To guard against that concern, a litigant must show a close relationship with the third party. *Id.* at 751. But such a relationship "is neither necessary nor sufficient for third party standing." *Id.* at 751-52 (citations omitted). Even a litigant with a close relationship cannot "raise positions contrary to the interests of the third party whose rights he or she claims to represent" because in such cases the litigant would not be "a vigorous advocate of the third party's position." *Id.* And "the relationship between the third party and the plaintiff only counts insofar as it is linked to the right asserted." *Id.*

These concerns are particularly salient where, as here, the right-holding third parties are ostensibly *benefited* by the statute the plaintiff seeks to challenge on their behalf. *See generally,* Br. of *Amici Curiae*, D.E. 68. At the very least, county government and officials and children cannot and do not share a "close relationship" with regard to a statute targeting (among other things) inefficiencies, waste, and fraud in the operation of the schools that they attend. The county government and local officials have an interest in retaining their "governing authority." TAC, at ¶ 238, D.E. 81-1, PageID 3340. The students have an interest in seeing the fraud, waste, and deficient academic performance that occurred under that governing authority rectified. Those conflicting interests are fatal to Plaintiffs' assertion of third party standing.

*Third,* even if a sufficiently close relationship does exist, no hindrance limits MSCS students' ability to assert their claim. As Defendants have pointed out previously, *see Defts.' Mem.*

*in Supp. of Mot. to Dismiss*, D.59 at PageID 3002, Plaintiffs have made no showing of a hindrance of any kind, nor have they identified any instance where third party standing was granted to a school board to represent the interests of students when students were already present in the suit. *Cf. Moody v. Michigan Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017) (noting that no hindrance prevented third party from protecting his own rights because he had filed his own suit). Thus, the nonstudent Plaintiffs lack third-party standing, and their claims must be dismissed.

**3. The MSCS Board Plaintiffs lack Article III standing in their individual capacities.**

Plaintiffs MSCS Board Member Plaintiffs Michelle Robinson McKissack, Natalie J. McKinney, Stephanie P. Love, Tamarques Porter, Sable Otey, Towanna Murphy, and Joyce Dorse Coleman, in their individual capacities also lack Article III standing to assert direct constitutional claims against Defendants on their own behalf. Again, Plaintiffs conceded this point during argument on October 2, limiting their claims to third party claims. *See, e.g.,* Transcript, D.E. 80 at PageID 3277, l. 15—3278 l. 3.

Even had the MSCS Board Member Plaintiffs in their individual capacities asserted an institutional injury (loss of governing authority), which they now disclaim, they have no personal stake in such a claim. Voters and residents have no fundamental right to an elected school board. There is no fundamental right to a particular governance model, and an equal-protection "stigmatic injury" presupposes a racial classification — which a facially neutral, performance-based statute does not contain absent a plausibly pleaded discriminatory purpose. The enhanced injury allegations therefore do not convert a governance grievance into a cognizable equal-protection injury. The direct claims of the MSCS Board Plaintiffs against Defendants are barred and must be dismissed due to lack of standing.

## II. ALTERNATIVELY, THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS.

As shown in Defendants' Motion to Dismiss, D.E. 58, Plaintiffs fail to state a claim upon which relief can be granted as to the remaining Defendants. The Act readily passes rational basis review because it is designed to improve Tennessee school districts with a combination of academic and school underperformance, management deficiencies, and leadership instability regardless of the school district's racial makeup. Plaintiffs do not plausibly allege that the race-neutral Act was enacted with a racially discriminatory purpose and do not overcome the presumption of good faith that applies to the General Assembly's enactments.

## CONCLUSION

For the reasons above, Plaintiffs lack Article III standing to assert their Fourteenth Amendment Equal Protection claims against Defendants. Accordingly, Plaintiffs' Motion for Leave to File Third Amended Complaint should be denied on grounds of futility. Alternatively, the Court should grant Defendant's motion to dismiss (D.E. 58) because Plaintiffs fail to plausibly allege that the race-neutral Act was enacted with a racially discriminatory purpose and do not overcome the presumption of good faith that applies to the General Assembly's enactments.

Respectfully submitted,

**JONATHAN SKRMETTI**
Attorney General and Reporter

s/ James R. Newsom III
JAMES R. NEWSOM III TN BPR 006683
Special Counsel

SHANNON HOFFERT TN BPR 028430
Deputy Attorney General

MATTHEW DOWTY TN BPR 032078
Senior Assistant Attorney General

MARK WESTON TN BPR 038585
Assistant Attorney General

One Commerce Square
40 S. Main St., Suite 1014
Memphis, TN 38103
(901) 543-2473

Shannon.Hoffert@ag.tn.gov
Jim.Newsom@ag.tn.gov
Matthew.Dowty@ag.tn.gov
Mark.Weston@ag.tn.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served by operation of the Court's ECF/PACER system on this the 16th day of October, 2026, upon:

**BAKER, DONELSON, BEARMAN**
**CALDWELL & BERKOWITZ, PC**

Bruce McMullen
Lori H. Patterson
Jerrick Murrell
Jennie Vee Silk
165 Madison Ave., Suite 2000
Memphis, TN 38103
bmcmullen@bakerdonelson.com
lpatterson@bakerdonelson.com
jmurrell@bakerdonelson.com
jsilk@bakerdonelson.com
*Counsel for Plaintiffs Shelby County*
*Government & Shelby County*
*Board of Commissioners*

**THE WADE LAW FIRM, PLLC**

Allan J. Wade
Brandy S. Parrish
5050 Poplar Ave., Suite 1028
Memphis, TN 38157
awade@thewadefirm.com
bparrish@thewadefirm.com
*Counsel for Plaintiffs Shelby County*
*Board of Education, Michelle Robinson*
*McKissack, Natalie J. McKinney,*
*Stephanie P. Love, Sable Otley,*
*Keith Williams, Towanna Murphy,*
*Amber Huett-Garcia, Joyce Dorse*
*Coleman, & Tamarques Porter*

s/ James R. Newsom III
JAMES R. NEWSOM III
Special Counsel